# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FLORENSTINE HOYLE,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | No. 16 C 4518<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Florenstine Hoyle filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Title II and XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et. seq., 1381 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover DIB or SSI, a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill.

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security and is substituted for her predecessor as the proper defendant in this action. Fed. R. Civ. P. 25(d).

2001).² A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520, 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

² The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The SSI regulations are set forth at 20 C.F.R. § 416.901 et seq. The standards for determining DIB and SSI are virtually identical. *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI benefits on May 2, 2013, alleging that she became disabled on March 24, 2012, due to bilateral cubital tunnel syndrome, lower back pain, osteoarthritis of knees, bilateral epicondylitis, patella femoral syndrome, GURD, and hiatal hernia. (R. at 14, 315–17, 319). The application was denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 14, 142–43, 170–71, 196–98). On July 16, 2014, Plaintiff, represented by a non-attorney representative, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 14, 29–52). The ALJ also heard testimony from Stephen L. Sprauer, a vocational expert (VE). (*Id.* at 14, 34–52; *see id.* at 263–65).

The ALJ denied Plaintiff's request for benefits on December 4, 2014. (R. at 14–28). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since March 24, 2012, the alleged onset date. (*Id.* at 16). At step two, the ALJ found that Plaintiff's obesity, degenerative disc disease of the lumbar spine, and early osteoarthritis are severe impairments. (*Id.* at 16–19). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.* at 19–20).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that she can perform light work, except "no more than frequent climbing, balancing, stooping, crouching, kneeling, crawling, bending and twisting." (R. at 20; *see id.* at 20–25). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff is unable to perform any past relevant work. (*Id.* at 25). At step five, based on Plaintiff's RFC, her vocational factors, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including counter clerk, furniture retail consultant, and dealer accounts investigator. (*Id.* at 25–26). Even if Plaintiff was limited to sedentary work, the ALJ determined, based on the VE's testimony, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including lamp shade assembler, food beverage order clerk, and charge account clerk. (*Id.* at 26–27). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 27).

The Appeals Council denied Plaintiff's request for review on February 26, 2016. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue,* 556 F.3d 558, 561–62 (7th Cir. 2009).

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is

weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. RELEVANT MEDICAL EVIDENCE

On June 5, 2013, Plaintiff completed an Adult Function Report. (R. at 327–37). She reported depression and frequent crying spells. (*Id.* at 329, 331–32). She also reported difficulty with memory, completing tasks, concentration, and following instructions. (*Id.* at 331).

On June 26, 2013, Roberta F. Stahnke, Psy.D., performed a psychological examination on behalf of the Agency. (R. at 460–63). Plaintiff reported that since 2010, she becomes "sad 'off and on,'" crying unexpectedly, for no reason. (*Id.* at 460). She also reported a single incident of suicidal ideation. (*Id.*). Plaintiff stated that she avoids socialization because of severe pain, which also makes it difficult to sleep. (*Id.*). She denied anxiety, panic attacks, mania, phobias, OCD, ritualistic behaviors, paranoia, delusions, hallucinations, or other psychotic symptoms. (*Id.* at 460–61). A mental status examination was largely unremarkable. (*Id.* at 461–62). Dr. Stahnke opined that while Plaintiff "reports some minor transient symptoms of depression, [ ] she does not meet full criteria for any depressive disorder or for any other mental

illness or personality disorder." (*Id.* at 462). Nevertheless, Dr. Stahnke assigned a Global Assessment of Functioning (GAF) score of 55, which indicates moderate symptoms.[4] (*Id.*).

On July 8, 2013, Russell Taylor, Ph.D., a state-agency consultant, reviewed the medical record, including Dr. Stahnke's mental status assessment, and completed a psychiatric review technique assessment. (R. at 122–23). Dr. Taylor gave Dr. Stahnke's GAF assessment "great weight" and diagnosed depression nos due to physical condition and life adjustments to not working. (*Id.* at 123–24). Dr. Taylor opined that Plaintiff's depression is severe and that she has moderate restrictions of daily living and moderate difficulties in maintaining concentration, persistence or pace. (*Id.* at 122). Dr. Taylor also completed a mental RFC assessment. (*Id.* at 126–27). He concluded that Plaintiff is moderately limited in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and to respond appropriately to changes in the work setting. (*Id.*). He opined that Plaintiff retains the mental capacity to under-

---

[4] The GAF includes a scale ranging from 0–100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Rev. 2000) (hereinafter *DSM-IV*). A GAF score of 51–60 indicates moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.* at 34. The Court notes that the fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013); *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (recognizing that the American Psychiatric Association abandoned the GAF scale after 2012).

stand and remember simple and detailed instructions; she would have moderate limitations with sustaining concentration and persisting for a normal work period; she can make simple, work-related decisions; she can interact and communicate sufficiently in a work setting; and she could adapt to simple, routine changes and pressures. (*Id.* at 127). On December 3, 2013, Thomas Low, Ph.D., affirmed Dr. Taylor's assessment. (*Id.* at 148–51, 153–54).

Plaintiff completed a second Adult Function Report on November 12, 2013. (R. at 356–63). She reported being "very depressed" and having difficulty getting out of bed and socializing with others. (*Id.* at 357, 360–61).

On December 17, 2013, Venkatesh Ravi, M.D., completed a Multiple Impairment Questionnaire. (R. at 658–65). He opined that Plaintiff's pain was not completely relieved with medication and would frequently interfere with attention and concentration and would likely increase in a competitive work environment. (*Id.* at 660, 662–63).

On June 4, 2014, Plaintiff reported depressed mood, anorexia, insomnia, and melancholy. (R. at 605). Dr. Ravi diagnosed depression and prescribed fluoxetine.[5] Plaintiff's physicians continued the fluoxetine prescription on June 24, August 5 and 28, September 10 and 23, and November 4. (*Id.* at 629, 673, 682, 694, 700–01, 705). On September 23, Plaintiff reported improved mood but still experiencing loss of appetite, insomnia, and melancholy. (*Id.* at 703).

---

[5] Prozac (fluoxetine) is used to treat major depressive disorder. <www.drugs.com> (last visited August 2, 2017).

# V. DISCUSSION

**A. The RFC Did Not Properly Account for Plaintiff's Mental Impairment**

The ALJ determined that Plaintiff's obesity, degenerative disc disease of the lumbar spine, and early osteoarthritis are severe impairments. (R. at 16–19). The ALJ also found "no documentation of a mental impairment," and thus, "no medically determinable [mental] impairment." (*Id.* at 19). After examining the medical evidence and giving partial credibility to some of Plaintiff's subjective complaints, the ALJ found that Plaintiff has the RFC to perform a limited range of light work. (*Id.* at 20–25).

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; see 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); Social Security Ruling (SSR)[6] 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends

---

[6] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

and family. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; see 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

After carefully examining the record, the Court concludes that the ALJ failed to fully consider the effects of Plaintiff's mental illness on her ability to work. The ALJ gave "no weight" to the opinions of the DDS physicians and concluded that "there is no actual documentation of a medically determinable mental impairment." (R. at 25). Under the circumstances, the ALJ's decision to afford *no* nonexertional mental limitations is not supported by substantial evidence.

First, the ALJ erred by handpicking which evidence to evaluate while disregarding other critical evidence. *See Scrogham v. Colvin*, 765 F.3d 685, 696–99 (7th Cir. 2014); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). In June 2013, Dr. Stahnke examined Plaintiff and assigned a GAF score of 55, which indicates moderate difficulty in social and occupational functioning. (R. at 461–62). Furthermore, in June 2014, Dr. Ravi diagnosed depression and prescribed fluoxetine, which is used to treat major depressive disorder. (R. at 605). The ALJ minimizes this evidence, high-

lighting instead that Dr. Stahnke found Plaintiff did not meet the full criteria for any depressive disorder. (*Id.* at 18). Based on this single notation, the ALJ concluded that "there is no documentation of a mental impairment." (*Id.*). "But by cherry-picking [the medical file] to locate a single treatment note that purportedly undermines her overall assessment of [the claimant's] functional limitations, the ALJ demonstrated a fundamental, but regrettably all-too-common, misunderstanding of mental illness." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). As the Seventh Circuit has explained on numerous occasions, "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Id.*

The ALJ's rejection of the State agency consultants' evaluations is not supported by substantial evidence. In July and December 2013, Drs. Taylor and Low reviewed the medical record and completed a psychiatric review technique assessment. (R. at 122–23, 148–51, 153–54). They gave Dr. Stahnke's GAF assessment "great weight" and diagnosed depression nos due to physical condition and life adjustments to not working. (*Id.*). They opined that Plaintiff's depression is severe and that she has moderate restrictions of daily living and moderate difficulties in maintaining concentration, persistence or pace. (*Id.* at 122, 149). They also concluded that Plaintiff is moderately limited in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest peri-

ods, and to respond appropriately to changes in the work setting. (*Id.* at 126–27, 153–54). Drs. Taylor and Low opined that Plaintiff retains the mental capacity to understand and remember simple and detailed instructions; she would have moderate limitations with sustaining concentration and persisting for a normal work period; she can make simple, work-related decisions; she can interact and communicate sufficiently in a work setting; and she could adapt to simple, routine changes and pressures. (*Id.* at 127, 154).

The ALJ gave no weight to these opinions, concluding erroneously that there is no documentation of any mental impairment. (R. at 19). To the contrary, the medical record contains significant evidence of depression symptoms, including crying spells, low motivation, insomnia, anorexia, and a fluoxetine prescription. (*Id.* at 44–45, 66, 329, 331–32, 357, 360–61, 461, 604, 629, 648, 673, 682, 694, 700–01, 703, 705, 727, 731, 743–44, 746, 749, 765, 771). Further, Drs. Taylor and Low had the expertise, as DDS consultants and experts in mental health, to appreciate that Dr. Stahnke's GAF assessment indicated that Plaintiff had at least *some* nonexertional limitations. It's true that GAF scores are not *dispositive* of Plaintiff's disability. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (explaining that the GAF score does not necessarily reflect doctor's opinion of functional capacity because the score measures severity of both symptoms *and* functional level). Nevertheless, Plaintiff's GAF score is *evidence* suggesting a far lower level of functioning than the ALJ assigned. *Yurt v. Colvin*, 758 F.3d 850, 859–60 (7th Cir. 2014) (Although the ALJ was not required to give any weight to individual GAF scores, "the problem here is not

the failure to individually weigh the low GAF scores but a larger general tendency to ignore or discount evidence favorable to Yurt's claim, which included GAF scores from multiple physicians suggesting a far lower level of functioning than that captured by the ALJ's hypothetical and mental RFC.").

The crux of the problem with the ALJ's opinion is that she ignored or minimized the views of the physicians who treated or evaluated Plaintiff and misapprehended the opinion of the consultative examiner. *See Phillips v. Astrue*, 413 F. App'x 878, 885 (7th Cir. 2010) ("And that is the crux of the problem with the ALJ's decision. The ALJ did not simply discard the conclusions of [the medical professional]; rather, the ALJ's decision belittled the views of every medical professional who treated or examined Phillips and adopted the terse conclusions of the one doctor who had never met her."). The ALJ's conclusion that Plaintiff can perform a range of light work *without any* nonexertional limitations is not supported by substantial evidence. The medical evidence suggests that Plaintiff's depression would cause at least *some* nonexertional limitations. *See Punzio*, 630 F.3d at 712 ("And the fact that Punzio is . . . not plagued by depression 24 hours a day says little about her abilities to understand and remember short instructions and to maintain attention for a two-hour segment."); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from . . . depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. For the reasons set forth herein, the ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall seek appropriate expert medical advice to determine what effects Plaintiff's mental illnesses have on her ability to work. The ALJ shall then reassess Plaintiff's RFC by "evaluating all limitations that arise from medically determinable impairments, even those that are not severe." *Villano*, 556 F.3d at 563. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted); *see Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014) ("We keep telling the Social Security Administration's administrative law judges that they have to consider an applicant's medical problems in combination.") (collecting cases). The RFC shall be "expressed in terms of work-related functions" and include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p.

## B. Other Issues

Because the Court is remanding on the mental impairment issue, the Court chooses not to address Plaintiff's other arguments. Nevertheless, on remand, after fully considering the effect of Plaintiff's mental illness on her ability to work, the

ALJ shall reassess the weight to be given to the opinions of Drs. Ravi and Romano. If the ALJ finds "good reasons" for not giving the opinions controlling weight, *see Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010), the ALJ shall explicitly "consider the length, nature, and extent of the treating relationship, frequency of examination, the physician's specialty, they types of tests performed, and the consistency and supportability of the physician's opinion," *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009), in determining the weight to give the opinions. The ALJ shall then reevaluate Plaintiff's physical and mental impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings. Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that existed in significant numbers that Plaintiff can perform.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's request to reverse the ALJ's decision and remand for additional proceedings is **GRANTED**, and Defendant's Motion for Summary Judgment [20] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: August 24, 2017

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge